

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-21-00453-CV

**IN THE INTEREST OF E.A.C.**, a Child

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CI-06011
Honorable Cynthia Marie Chapa, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Patricia O. Alvarez, Justice
                 Luz Elena D. Chapa, Justice
                 Lori I. Valenzuela, Justice

Delivered and Filed: February 15, 2023

MOOT CLAIMS DISMISSED; REVERSED AND REMANDED

In this suit affecting the parent-child relationship, Mom sought to modify the existing possession order for her child E.A.C.[1] Dad, with whom E.A.C. had been living out of state for several years, filed a plea to the jurisdiction. He argued the trial court had lost its exclusive continuing jurisdiction. The trial court agreed, and it granted Dad's plea. Mom appealed.

During the pendency of this appeal, E.A.C. turned eighteen years old, which mooted Mom's claims for conservatorship, possession and access, and enforcement of a conservatorship order. We dismiss Mom's claims for conservatorship, possession and access, and enforcement of a conservatorship as moot. But because E.A.C. still had a significant connection with Texas and Mom's claim for attorney's fees and a portion of her interference with possessory interest claim

---

[1] We use aliases to protect the child's identity. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

survive, we reverse the trial court's order granting Dad's plea to the jurisdiction, and we remand this cause to the trial court.

## BACKGROUND

E.A.C. was born to Mom and Dad in September 2004. Mom and Dad divorced in Bexar County, Texas, in 2010, and each was appointed as a joint managing conservator.

In January 2018, Mom petitioned to modify the parent-child relationship with respect to E.A.C.,[2] Dad counter-petitioned, and the case was tried to a jury in 2019. On June 4, 2020, in accordance with the verdict, the trial court appointed Mom as a possessory conservator and Dad as sole managing conservator. Dad was also given the right to designate the primary residence of the child, and E.A.C. continued living with Dad in California. Mom appealed, but this court affirmed the trial court's order. *See In re E.A.C.*, 647 S.W.3d 485, 488 (Tex. App.—San Antonio 2022, no pet.).

In July 2021, Mom again petitioned to modify the parent-child relationship. She also sought attorney's fees and damages for Dad's alleged interference with her possessory interest with E.A.C. Dad filed an answer and a plea to the jurisdiction; the trial court heard only the plea to the jurisdiction. The trial court granted Dad's plea, and Mom appeals. She argues, inter alia, the trial court abused its discretion by granting Dad's plea against her petition to modify the child custody order, petition for enforcement of the child custody order, and her claim for interference with possessory interest in a child.

Because mootness disposes of several of Mom's issues, we begin with mootness.

---

[2] Mom and Dad had another child together, but that child was born several years before E.A.C., and that child was not a subject of the underlying petition for modification.

**MOOTNESS**

An issue may become moot at any time, including on appeal, and the court may sua sponte consider mootness. *See Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001) (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)). "Mootness occurs when events make it impossible for the court to grant the relief requested or otherwise 'affect the parties' rights or interests.'" *State ex rel. Best v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018) (quoting *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 162 (Tex. 2012)).

**A.      Child's Majority Moots Conservatorship Issues**

"When a child turns eighteen years old, issues of conservatorship become moot." *In re J.D.*, No. 04-19-00239-CV, 2020 WL 4607015, at *1 (Tex. App.—San Antonio Aug. 12, 2020, no pet.) (mem. op.) (citing *In re N.J.D.*, No. 04-13-00293-CV, 2014 WL 555915, at *1 (Tex. App.—San Antonio Feb. 12, 2014, pet. denied) (mem. op.)); *see* TEX. FAM. CODE ANN. § 152.102(2) (defining a child as "an individual who has not attained 18 years of age").

With respect to that child, there is no longer a live controversy for issues of custody, possession, or access; those issues are moot. *In re Marriage of Comstock*, 639 S.W.3d 118, 127 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (quoting *D.C. v. Tex. Dep't of Family & Protective Servs.*, No. 03-11-00453-CV, 2012 WL 1403333, at *1 (Tex. App.—Austin Apr. 19, 2012, no pet.) (mem. op.)).

"When a case becomes moot, the court loses jurisdiction and cannot hear the case, because any decision would constitute an advisory opinion that is 'outside the jurisdiction conferred by Texas Constitution article II, section 1.'" *Harper*, 562 S.W.3d at 6 (quoting *Matthews, on behalf of M.M. v. Kountze Indep. Sch. Dist.*, 484 S.W.3d 416, 418 (Tex. 2016)).

**B.      When Claims May Survive**

But "[a] case is not [necessarily] rendered moot simply because some of the issues become moot during the appellate process." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding) (citing *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642–43 (Tex. 2005)). "If only some claims or issues become moot, the case remains 'live,' at least as to other claims or issues that are not moot." *Harper*, 562 S.W.3d at 6 (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737).

In some instances, a claim for attorney's fees can survive the related issue becoming moot, as explained in *Harper*:

> Whether an attorney's-fees claim breathes life into an otherwise moot appeal depends first on whether the claimant seeks the fees under a statute that authorizes fees only for a prevailing party or, alternatively, under a statute that permits fees based on equitable principles regardless of who prevails. If the statute allows a non-prevailing party to recover fees under equitable principles, the claim for fees always breathes life into a case that has otherwise become moot, because the trial court must always consider the relative merits of the parties' positions (among other factors) when exercising its discretion to award fees to either party.

> But when the party seeks attorney's fees under a prevailing-party statute, the determination whether the attorney's-fees claim is moot depends on whether the party prevailed before the underlying substantive claim became moot. As we recognized in *Camarena*, if the party prevailed before the substantive claim became moot, the party's claim for attorney's fees under a prevailing-party statute remains a live controversy and a court must consider the claim's merits to determine whether the party properly prevailed. But as we recognized in *Speer v. Presbyterian Children's Home & Service Agency*, if the party did not prevail before the substantive claim became moot, the party's claim for attorney's fees is also moot because the party can never prevail and thus can never be entitled to attorney's fees.

*Id.* at 7–8 (citations omitted).

**C.      Child Becomes an Adult**

E.A.C. turned eighteen years old in September 2022: he became an adult, *see* TEX. FAM. CODE ANN. § 152.102(2); *In re Marriage of Comstock*, 639 S.W.3d at 127, and there is no evidence

that he is subject to any ongoing legal disability. Thus, we must determine what claims, if any, from Mom's July 2021 petition to modify the parent-child relationship are still live. *See Harper*, 562 S.W.3d at 7–8.

**D.     Mom's Claims**

In her petition to modify the parent-child relationship, Mom presented claims for conservatorship, possession and access, enforcement, and interference with possessory interest.

*1.     Conservatorship Claim*

In her conservatorship claim, Mom asked the trial court to modify the possession order, appoint her as sole managing conservator, allow her to designate the primary residence of the child, and assign specific rights and duties to her.

*2.     Possession and Access Claim*

In her possession and access claim, Mom asked the trial court to apply the Bexar County Standing Order applicable to SAPCRs and issue temporary orders for conservatorship, possession, and access.

*3.     Enforcement Claim*

In her enforcement claim, Mom asked the trial court to enforce its June 4, 2020 order regarding Mom's possession and access to E.A.C. Mom alleged that Dad illegally maintained possession of E.A.C. in June 2021, and she seeks contempt punishments against Dad.

*4.     Interference with Possessory Interest Claim*

In her interference with possessory interest claim, Mom cites Chapter 42 of the Texas Family Code. She seeks attorney's fees, costs, expenses, and exemplary damages.

**E.     Conservatorship and Related Claims are Moot**

Because E.A.C. became an adult, he has no ongoing legal disability, and no exceptions to mootness apply, Mom's claims for conservatorship, possession and access, and enforcement are

moot. *See* TEX. FAM. CODE ANN. § 152.102(2); *In re J.D.*, 2020 WL 4607015, at *1; *In re N.J.D.*, 2014 WL 555915, at *1; *see also In re Marriage of Comstock*, 639 S.W.3d at 127; *Ngo v. Ngo*, 133 S.W.3d 688, 691 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.). Because these claims are moot, we need not address them further.

**F.      Interference with Possessory Interest Claim**

Whether Mom's interference with possessory interest claim survives is a more complex question. We begin by reciting the applicable statutory provisions.

*1.      Applicable Statute*

To address circumstances where a person interferes with the plaintiff's possessory right to a child, the legislature created a civil cause of action: "A person who takes or retains possession of a child or who conceals the whereabouts of a child in violation of a possessory right of another person may be liable for damages to that person." TEX. FAM. CODE ANN. § 42.002(a).

The legislature also specified the type of damages the plaintiff may recover:

(a)   Damages may include:

   (1)   the actual costs and expenses incurred, including attorney's fees, in:

      (A)   locating a child who is the subject of the order;

      (B)   recovering possession of the child if the petitioner is entitled to possession; and

      (C)   enforcing the order and prosecuting the suit; and

   (2)   mental suffering and anguish incurred by the plaintiff because of a violation of the order.

(b)   A person liable for damages who acted with malice or with an intent to cause harm to the plaintiff may be liable for exemplary damages.

*Id.* § 42.006.

*2.      Creating Liability for Past Actions*

Under the interference provision, the plaintiff may be able to recover possession of the child and obtain the court's help in enforcing the possession order. *See id.* § 42.002. But these

prospective forms of relief become moot when the child becomes an adult.  *See In re Marriage of Comstock*, 639 S.W.3d at 127; *In re J.D.*, 2020 WL 4607015, at \*1; *In re N.J.D.*, 2014 WL 555915, at \*1.

On the other hand, the statute's plain language contemplates imposing liability for interference, including past interference.  *See* TEX. FAM. CODE ANN. § 42.002(a).

The interference provision allows the plaintiff to allege that the defendant took or retained possession of the child in violation of the plaintiff's possessory right.  *Id.* (creating a cause of action against "[a] person who takes or retains possession of a child . . . in violation of a possessory right of another person").  The plain language does not condition the cause of action on a present or ongoing interference.  *Id.*

The damages provision allows the successful plaintiff to recover "the actual costs and expenses incurred" and damages for the "mental suffering and anguish incurred."  *Id.* § 42.006(a).  It also authorizes exemplary damages if the defendant "acted with malice or intent to cause harm to the plaintiff."  *Id.* § 42.006(b).

The legislature's use of past-tense verbs—i.e., incurred and acted—refer to past actions and show the legislature's intent to allow recovery for past interference.  *See id.* § 42.006; *Guimaraes v. Brann*, 562 S.W.3d 521, 546 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (recognizing that the section allows recovery of past and prospective actual costs and expenses).

### 3. *Dad's Potential Liability*

Here, Mom alleged that Dad interfered with her possessory interest in E.A.C. while E.A.C. was still a child.  But at the hearing on Dad's plea to the jurisdiction, the trial court expressly limited arguments to only the jurisdiction question.  Without considering the merits of Mom's interference with possessory interest claim, the trial court granted Dad's plea.  After the trial court

signed its order and while this case was on appeal, E.A.C. became an adult—which mooted Mom's conservatorship claims. *See In re Marriage of Comstock*, 639 S.W.3d at 127.

However, given the legislature's intent to allow a plaintiff to recover damages for past actions involving an interference with possessory interest claim, we conclude that the portion of Mom's claim—that Dad interfered with her possessory interest in E.A.C.—which accrued before E.A.C.'s eighteenth birthday did not become moot when E.A.C. became an adult. *See* TEX. FAM. CODE ANN. §§ 42.002, .006; *cf. In re Marriage of Comstock*, 639 S.W.3d at 128 ("When the custody determination implicates the financial obligations imposed by the final decree that accrued prior to the child's emancipation—such as attorney's fees and the amount of previously-accrued child support—'a live controversy remains to such extent.'").

Accordingly, if Mom prevails in her interference claim, the trial court may award damages for her cognizable damage that accrued while E.A.C. was still a child. *See* TEX. FAM. CODE ANN. §§ 42.002, .006; *cf. In re Marriage of Comstock*, 639 S.W.3d at 128.

On the other hand, if Dad prevails and Mom's claim is frivolous, unreasonable, or without foundation, Dad would be entitled to his attorney's fees and court costs. *See* TEX. FAM. CODE ANN. § 42.009; *Brann v. Guimaraes*, No. 14-20-00023-CV, 2021 WL 4099651, at *3 (Tex. App.—Houston [14th Dist.] Sept. 9, 2021, no pet.) (mem. op.).

Regardless of who may prevail, the portion of Mom's claim for interference with her possessory interest that accrued before E.A.C. became an adult is still live. *Cf. In re Marriage of Comstock*, 639 S.W.3d at 127; *In re J.D.*, 2020 WL 4607015, at *1; *In re N.J.D.*, 2014 WL 555915, at *1.

## G.    Attorney's Fees

Under a separate heading in her petition to modify the parent-child relationship, Mom again asked for costs and attorney's fees, but she did not cite any specific authorizing statute.

We construe her claim as a request under Title 5 for attorney's fees "in a suit under this title." *See* TEX. FAM. CODE ANN. § 106.002(a) ("In a suit under this title, the court may render judgment for reasonable attorney's fees and expenses and order the judgment and postjudgment interest to be paid directly to an attorney.").

The applicable provision, section 106.002, is not a prevailing party statute. *See Lenz v. Lenz*, 79 S.W.3d 10, 21 (Tex. 2002) ("An attorney's fees award in a suit affecting the parent-child relationship is discretionary with the trial court."); *In re R.E.S.*, 482 S.W.3d 584, 586 (Tex. App.—San Antonio 2015, no pet.) ("[T]he current language of Family Code Section 106.002 does not impose a prevailing-party requirement."); *In re A.B.R.*, No. 04-17-00220-CV, 2018 WL 3998684, at *9 (Tex. App.—San Antonio Aug. 22, 2018, no pet.) (mem. op.) (same).

Because section 106.002 is a discretionary award statute, Mom's attorney's fees claim under section 106.002 survives. *See* TEX. FAM. CODE ANN. § 106.002(a); *Harper*, 562 S.W.3d at 7 ("If the statute allows a non-prevailing party to recover fees under equitable principles, the claim for fees always breathes life into a case that has otherwise become moot, because the trial court must always consider the relative merits of the parties' positions (among other factors) when exercising its discretion to award fees to either party."); *In re R.E.S.*, 482 S.W.3d at 586.

Because some of Mom's claims survive E.A.C. becoming an adult, we now consider whether the trial court erred in granting Dad's plea to the jurisdiction.

## PLEA TO THE JURISDICTION

In his plea to the jurisdiction, Dad argued the trial court had lost exclusive continuing jurisdiction because neither he nor E.A.C. had a significant connection with Texas and there was no substantial evidence of E.A.C.'s care, protection, training, or relationships in Texas.

**A.    Hearing on the Plea**

At the hearing on Dad's plea, the trial court allowed Mom and Dad to testify regarding the jurisdictional question.

Dad testified that E.A.C. had not lived in Texas since January 2015, he and E.A.C. had lived in California since January 2018, neither he nor E.A.C. had a significant connection with Texas, and there was no substantial evidence about E.A.C. in Texas pertaining to E.A.C.'s care, protection, training, or personal relationships.

Mom testified that she lives in Bexar County, Texas, her parents and extended family also live here, and E.A.C. has repeatedly visited her and her family here.

**B.    Trial Court's Ruling, Finding, Conclusion**

After it heard the parents' testimony, the trial court granted Dad's plea, and it issued findings of fact and conclusions of law. It found that Dad "established that the child, E.A.C. and [Dad] . . . no longer [have] a significant connection with this state, and that substantial evidence is no longer available in this state concerning [E.A.C.'s] care, protection, training and personal relationships." It concluded that Dad "met Texas Family Code 152.202 requirements."

Mom challenges the trial court's finding and conclusion.

We briefly recite the applicable law and standard of review.

**C.    Standard of Review**

A defendant may challenge a trial court's subject matter jurisdiction by a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

"Where the jurisdictional issue or facts do *not* implicate the merits of the case, and the facts are disputed, the court—not the jury—must make the necessary fact findings to resolve the jurisdictional issue." *Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 806 (Tex. App.—Austin 2009, no pet.) (citing *Miranda*, 133 S.W.3d at 226).

On appellate review, "when the jurisdictional issue is not intertwined with the merits, we must defer to the trial court's express or implied factual determinations *that are supported by sufficient evidence*," *Worsdale v. City of Killeen*, 578 S.W.3d 57, 66 (Tex. 2019) (emphasis added) (citing *Miranda*, 133 S.W.3d at 226–28), but "any fact findings made to resolve the jurisdictional issue may be challenged, as any other fact findings, for legal and factual sufficiency," *Poindexter*, 306 S.W.3d at 806 (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)); *accord In re Y.B.*, 300 S.W.3d 1, 4 (Tex. App.—San Antonio 2009, pet. denied).

We review de novo the trial court's determination of its subject matter jurisdiction. *City of Dallas v. Carbajal*, 324 S.W.3d 537, 538 (Tex. 2010) (citing *Miranda*, 133 S.W.3d at 226).

## D.      Jurisdiction under the UCCJEA

For a SAPCR, "the UCCJEA articulates circumstances under which a court has, or loses, 'jurisdiction' over child-custody determinations." *In re D.S.*, 602 S.W.3d 504, 513 (Tex. 2020) (citing TEX. FAM. CODE ANN. § 152.201(a)).   "The party seeking to invoke the trial court's jurisdiction has the burden to allege facts that affirmatively demonstrate the court's authority to hear the case." *Cortez v. Cortez*, 639 S.W.3d 298, 306 (Tex. App.—Houston [1st Dist.] 2021, no pet.); *accord In re D.S.*, 602 S.W.3d at 509–10.

"We construe the pleadings in favor of the party invoking jurisdiction and consider relevant evidence when necessary to resolve the jurisdictional issue." *Cortez*, 639 S.W.3d at 306 (citing *Seligman-Hargis v. Hargis*, 186 S.W.3d 582, 585 (Tex. App.—Dallas 2006, no pet.)).

"For purposes of the UCCJEA, jurisdiction is determined at the time child-custody proceedings commence." *In re D.S.*, 602 S.W.3d at 513; *see Cortez*, 639 S.W.3d at 305.

### E.     Establishing *Loss* of Continuing Jurisdiction

A trial court which has established initial child custody jurisdiction under section 152.201 "has exclusive continuing jurisdiction over the determination." TEX. FAM. CODE ANN. § 152.201; *see In re Dean*, 393 S.W.3d 741, 746 (Tex. 2012) (orig. proceeding).

However, the trial court may lose that exclusive continuing jurisdiction when two elements are established. *See* TEX. FAM. CODE ANN. § 152.202(a)(1); *In re Forlenza*, 140 S.W.3d 373, 375 (Tex. 2004) (orig. proceeding).

First, "a court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent, have a significant connection with this state." TEX. FAM. CODE ANN. § 152.202(a)(1); *accord In re Forlenza*, 140 S.W.3d at 375.

Second, the court also determines "that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships." TEX. FAM. CODE ANN. § 152.202(a)(1); *accord In re Forlenza*, 140 S.W.3d at 375.

For the first element, "the UCCJEA does not premise the exclusive continuing jurisdiction determination on which state has the *most* significant connection with the child." *In re Forlenza*, 140 S.W.3d at 378 ("[A]lthough evidence was admitted which establishes that [the child] has significant ties with [a different state], that fact alone does not necessarily mean that there is no significant connection with Texas . . . ." (quoting *In re McCormick*, 87 S.W.3d 746, 750 (Tex. App.—Amarillo 2002, no pet.))).

If there is a significant connection with Texas, we need not address the substantial evidence element; the trial court's exclusive continuing jurisdiction is not lost because of the significant connection. *See id.* at 379 ("[E]xclusive jurisdiction continues in the decree-granting state as long as a significant connection exists *or* substantial evidence is present."); *Cortez*, 639 S.W.3d at 308 (same).

**F.    Significant Connection**

"Visitation within the state is generally considered as evidence of a significant connection, particularly when the children maintain a relationship with relatives in the state other than the noncustodial parent." *Cortez*, 639 S.W.3d at 309 (quoting *In re A.C.S.*, 157 S.W.3d 9, 16 (Tex. App.—Waco 2004, no pet.)); *see also In re Forlenza*, 140 S.W.3d at 377 ("Other courts commonly consider visitation within the state as evidence of a significant connection.").

**G.    Discussion**

Here, the parties do not dispute, and the record conclusively establishes, that when Mom filed her motion to modify in July 2021, the trial court had exclusive continuing jurisdiction over E.A.C. *See In re D.S.*, 602 S.W.3d at 513.

Dad argued that he and E.A.C. had no significant connection with Texas, but the record conclusively establishes that E.A.C. had a substantial connection with Texas. *Cf. In re Forlenza*, 140 S.W.3d at 376; *Cortez*, 639 S.W.3d at 308. For example, Dad testified that Mom, her parents, and some of E.A.C.'s cousins live in San Antonio.

And Mom testified that she and her parents still live in Bexar County, and E.A.C. had visited her in Texas at least five times in the previous eighteen months. E.A.C.'s visits with her included a spring break, a six-week summer visit, and a Christmas visit in 2020, and a summer visit in 2021. When E.A.C. visits her, they go out to dinner, go shopping and to museums, and spend time together. They also visit with her parents. Her parents will take E.A.C. out to dinner or have Mom and E.A.C. over to their home for dinner. And when E.A.C. is at home in California, Mom speaks with E.A.C. twice a week for a few minutes.

Dad testified that E.A.C. had no friends in San Antonio, but Mom testified that E.A.C. "has a close friend that he's known all his life" in Bexar County. Other than Mom's testimony about whether E.A.C. has a friend in Bexar County, Mom's testimony regarding E.A.C.'s connections

to Texas was either undisputed or affirmed by Dad. *See City of Keller v. Wilson*, 168 S.W.3d 802, 815 (Tex. 2005) (noting that "[u]ndisputed contrary evidence may . . . become conclusive when a party admits it is true"). Notably, Dad did not dispute Mom's testimony about the number, nature, or duration of E.A.C.'s recent visits to Texas. *See id.*

Having reviewed the record, we conclude that the trial court erred when it found that E.A.C. did not have a significant connection with Texas. *See In re Forlenza*, 140 S.W.3d at 378 ("Because the record establishes that the children visited Texas on a number of occasions and maintained a close relationship with their mother and other relatives residing in Texas, all important considerations under the UCCJEA, we hold that the children have a significant connection with Texas sufficient to support the trial court's exclusive continuing jurisdiction over the modification proceedings.").

Because the record conclusively establishes that E.A.C. had a significant connection with Texas, we need not consider the substantial evidence elements. *See* TEX. FAM. CODE ANN. § 152.202(a)(1); *In re Forlenza*, 140 S.W.3d at 379; *Cortez*, 639 S.W.3d at 308.

We necessarily conclude that the trial court erred when it found it had lost exclusive continuing jurisdiction and granted Dad's plea to the jurisdiction. *See* TEX. FAM. CODE ANN. § 152.202(a)(1); *In re Forlenza*, 140 S.W.3d at 377–78.

We sustain Mom's first issue.

## INCONVENIENT FORUM

In her second issue, Mom argues Texas is not an inconvenient forum, but she recognizes that the trial court did not rule on whether California was a more convenient forum. She asserts that, if the trial court granted Dad's plea to the jurisdiction based on Texas being an inconvenient forum, it erred.

Similar to *In re Forlenza*, the central issue before us is whether the trial court retained exclusive continuing jurisdiction, not whether Texas is an inconvenient forum.[3] *See In re Forlenza*, 140 S.W.3d at 378 ("Importantly, the only issue before us is whether the Texas court retained jurisdiction; the court could still decline to exercise that jurisdiction if another forum was more convenient."). The record shows the trial court granted Dad's plea because it, albeit erroneously, concluded it lost exclusive continuing jurisdiction—not for an inconvenient forum.

Because we are reversing the trial court's order with respect to the surviving issues, Mom's second issue is moot.

### INTERFERENCE WITH POSSESSORY INTEREST

In her third issue, Mom argues the trial court abused its discretion by dismissing her interference with possessory interest claim "because that suit was not governed by Chapter 152 of the Family Code."

For different reasons, we have already determined that part of Mom's interference with possessory interest claim is moot, but her claim for any cognizable damage she incurred before E.A.C. became an adult survives. Thus, Mom's third issue is moot.

### AWARD OF DAD'S ATTORNEY'S FEES

The remaining matter is the award of attorney's fees to Dad. In his plea to the jurisdiction, Dad stated it was necessary for him to hire an attorney "to preserve and protect the child's rights," and he sought attorney's fees. *See* TEX. FAM. CODE ANN. § 106.002(a) (authorizing attorney's fees in a SAPCR). The trial court awarded Dad attorney's fees, and Mom asked this court to reverse the trial court's order—which includes the attorney's fees award.

---

[3] We express no opinion on whether Texas is an inconvenient forum. *See* TEX. FAM. CODE ANN. § 152.207; *In re Forlenza*, 140 S.W.3d at 378.

The award was based on the trial court's discretion at the time, but since then, E.A.C. became an adult, and there are fewer live claims. Because "[a]n attorney's fees award in a suit affecting the parent-child relationship is discretionary with the trial court," *Lenz v. Lenz*, 79 S.W.3d 10, 21 (Tex. 2002), and the factors that may influence the trial court's discretion have changed, we reverse the award of attorney's fees to Dad. On remand, the trial court may again exercise its discretion regarding any award of attorney's fees. *See* TEX. FAM. CODE ANN. § 106.002(a); *Lenz*, 79 S.W.3d at 21.

## CONCLUSION

After the trial court signed its order granting Dad's plea to the jurisdiction, and while this case was on appeal, E.A.C. turned eighteen years old; for child custody purposes, E.A.C. became an adult, and Mom's claims for conservatorship, possession and access, and enforcement of a child custody order became moot.

We dismiss Mom's claims for conservatorship, possession and access, and enforcement of a child custody order. But because E.A.C. still had a significant connection with Texas and Mom's claims for interference with possessory interest and attorney's fees survive, we reverse the trial court's order granting Dad's plea to the jurisdiction with respect to Mom's surviving claims and the award of attorney's fees to Dad, and we remand this cause to the trial court.

Patricia O. Alvarez, Justice